H. W. LAMBERTON *vs.* E. V. BOGART, Administrator.

## July 1, 1891.

**Life Insurance—Endowment Policy, to whom Payable.**—The terms of an endowment policy of life insurance construed, and *held* that, in case of the death of the insured before the maturity of the policy, the sum assured was payable to his wife only in case she survived him; otherwise to his personal representatives or assigns.

Plaintiff, as assignee of the policy considered in the opinion, brought this action in the district court for Winona county, against the Connecticut Mutual Life Insurance Company. On application of the company, and upon its depositing in court the amount due ($1,184.58) on the policy, E. V. Bogart, administrator of the estate of Anna Elmer, deceased, was substituted in its place as defendant. Thereafter the action was tried by *Start, J.,* (a jury being waived,) who ordered judgment for defendant. The plaintiff appeals from an order refusing a new trial.

*James A. Tawney* and *H. M. Lamberton,* for appellant.

*Keyes & Brown,* for respondent.

MITCHELL, J. In January, 1867, the Connecticut Mutual Life Insurance Company executed and delivered to George H. Elmer a policy of insurance upon his life, for the sum of $1,200, payable on the 28th day of February, 1892, when the said Elmer should have attained the age of 55 years, or in 90 days after due notice and proof of his death, should he die before attaining to that age. In and by this policy the company "promise and agree to and with the said assured well and truly to pay, or cause to be paid, the said sum assured at the date aforesaid, or to his executors, administrators, or assigns, in ninety days after satisfactory proof of the death of said Geo. H. Elmer, if death occurs prior to his attaining the age of fifty-five years.

*In case of the death of said George H. Elmer before attaining the age of fifty-five years, this policy shall be payable to Anna Elmer, wife of said Geo. H. Elmer.*" That part of the foregoing which is italicized was inserted in writing, while the remainder was in the printed provisions of the policy. Elmer paid the annual premiums on the policy up to the time of his death. In February, 1889, Mrs. Elmer died intestate, leaving surviving her husband and their four children, two of whom were in being when the policy was issued, the other two having been born afterwards. After the death of his wife, Elmer assigned the policy to the plaintiff, and subsequently died before attaining the age of 55 years. The question is, which of the parties is entitled to the proceeds of the policy,—the plaintiff, as assignee of the husband, or the defendant, as administrator of the wife? This is purely a question of construction of the terms of the policy itself.

Defendant's contention is that, the written portion of the policy being inconsistent with the printed portion, the former must prevail; that by it the wife is made the sole beneficiary of the policy in case the husband died before reaching the age of 55 years; and that as a policy, and the money to become due under it, belong, the moment it is issued, to the person named in it as beneficiary, the person who procured the insurance has no power, by any act of his, to transfer them to any other person. If defendant's premises are correct, there can be no doubt that his conclusions are good law. But the questions are whether there is any necessary conflict between the printed and written provisions of this policy, and what was the nature and extent of the wife's interest in it. Was she or her estate the sole beneficiary in case the husband died before attaining the age of 55, or was her interest subject to the further contingency that she survived him? If any reasonable construction can be given to these two provisions of this policy, so as to reconcile them with each other and give effect to both, it ought to be done, the same as if they were both written or both printed. It is an elementary rule of construction that every contract is to be construed with reference to its object and the whole of its terms, even though the immediate object of inquiry is the meaning of a single clause. The sole purpose of construction is, if possible, to ascertain the intention of the parties.

Now, here was a person taking out at his own expense an endowment policy on his own life, the primary object being his own benefit, to wit, securing a fund payable to himself at a certain age. But, as he might not attain that age, the policy provides, in case of his death before that time, for the payment of the money to his personal representatives for the benefit of his estate. But, while this was his primary object, yet he also desired to make provision for his wife in case he died before the maturity of the policy. Hence, leaving the previous provisions of the policy unchanged, he causes this written one to be added. Manifestly what he had in mind was not a provision for the benefit of his wife's estate or her heirs or assigns, but protection for the wife herself, in case she survived him. Had he also had in mind protection for his children, the easiest and most natural thing in the world to have done would have been to expressly provide that the policy should be payable to them in case of the death of both himself and his wife. These provisions in policies of life insurance, designating beneficiaries to whom the money shall be paid upon the death of the insured, are somewhat of the nature of testamentary dispositions, and their language is to be read and interpreted in very much the same way. Now, while it is true that, if the wife was the sole beneficiary of the policy, the proceeds would, in case of her death, go to her executors, administrators, or assigns without any such words in the policy, yet, as bearing upon the question of intention, it is a significant fact that no such words were inserted in the written provision, although they appeared in the preceding printed portion of the policy. This is strongly suggestive of an intention that the written provision should be for the sole benefit of the wife personally. Again, had it been intended that the wife or her estate should be the sole beneficiary in case of the death of the insured before the age of 55 years, the most natural thing would have been to erase the preceding printed provision as to payment to his executors, etc.; for, in such case, that provision would be wholly inoperative.

Neither can we see the force of the suggestion that, by appointing his wife absolutely the sole beneficiary, the insured would be making provision for his children as well as his wife. If she survived him,

that object might be accomplished by having the money go to her, for she would then be the head of the family, and the natural protector of the children. But, when both husband and wife are dead, it is difficult to see how the children would be better protected by having the money go to the wife's estate rather than to that of the husband. Of course, a combination of circumstances might occur where this might be so, as, for example, if the wife died solvent, and the husband insolvent, and the sole and common heirs of both were their children. But this was too remote and conjectural to warrant the assumption that it was present in the mind of the insured when taking out the policy. On the other hand, other combinations of circumstances, equally likely to occur, might be supposed where such a provision would deprive the family of the insured of all benefit of the policy, as, for example, the death of the two children, and then of Mrs. Elmer, soon after the policy was issued, a second marriage by Elmer, and his death before the age of 55, leaving children by his second marriage.

It seems to us that what the insured had in mind, and what he intended by the written portion of this policy, was to provide protection for his wife, in case she survived him, and nothing more. Thus construed, the meaning of the policy would be that, in case of the death of the insured before its maturity, the money should be paid to his personal representatives or assigns, provided, however, if his wife was then living, it should be paid to her. This construction would give effect to both the printed and the written portions of the policy, for it would make the latter in the nature of an exception to the former, leaving the printed provision in force, except in case of the happening of the contingency constituting the exception. While it is with some diffidence that we reach a conclusion different from that arrived at by the able judge who tried the case, yet, taking into consideration all the terms of this policy, its object and subject-matter, we think that the construction we have adopted is in accordance with the intention of the parties at the time the policy was issued.

It is urged that, as the record does not purport to contain all the evidence, we must assume that there was sufficient to support the

finding of the court that the insurance company "promised and agreed to pay to Anna Elmer the amount of the policy in case of the death of her husband before attaining the age of fifty-five years." But the findings show that this is merely the court's construction of the language of the policy. The language of the finding is that the insurance company promised and agreed "in and by said policy," which is set up in the complaint, and admitted in the answer. As said at the outset, the sole question is one of the construction of the terms of the policy itself.

Judgment reversed, and cause remanded, with direction to the trial court, upon its findings of fact, to order judgment for the plaintiff.

NOTE. After the filing of the foregoing decision, the respondent moved that it be modified so as to allow the district court, on proper application, to amend and modify its findings of fact. After argument the motion was denied on July 14, 1891.